## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 10-350 (DWF/JJG)** |
| Plaintiff, | |
| | **REPORT** |
| v. | **AND** |
| | **RECOMMENDATION** |
| **Jose Arcadio Guillen Tapia,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on January 31, 2011 for resolution of pretrial motions.  Michael A. Dees, Assistant U.S. Attorney, appeared for the Government.  Manvir K. Atwal, Assistant Federal Defender, appeared on behalf of defendant Jose Tapia.  The dispositive motions in this matter are referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a).

This prosecution arises from the seizure of a package from a mail processing center.  After the seizure, officers obtained a warrant and opened the package, finding methamphetamine.  The officers then set up a controlled delivery of the package to its destination address, and incident to this delivery, they obtained a warrant to search the residence there.

Through a motion to suppress evidence from search and seizure (Doc. No. 10), Mr. Tapia (Tapia) challenges several elements of this investigation.  He contends that, when the officers first seized the package, they lacked reasonable, articulable suspicion to do so.  This violation, Tapia argues, tainted the ensuing warrant for the residence.  In the alternative, Tapia asserts there was not probable cause to support that warrant.

I.      **Background**

The only witness to testify in connection with this motion was Detective Mark Meyer of the Minneapolis St. Paul International Airport Police.  On Saturday, November 20, 2010, Meyer received a telephone call from UPS, which advised that it was holding a suspicious package at its airport processing center.  UPS also informed Meyer that it had attempted to deliver the package once beforehand.

Meyer later went to the processing center with Brio, a dog certified in narcotics detection. When they entered the center, Brio sniffed several packages without alerting to narcotics.  A UPS employee opened a nearby office and allowed Meyer and Brio to enter, although Meyer did not recall whether he was expressly invited to go inside.  Brio immediately located a package there, which evidently was the only one in the office, and alerted to the presence of narcotics. Following this alert, Meyer took the package and returned to his car, where he examined the package more closely.

According to Meyer, drug dealers use next-day air shipping to transport illegal drugs, and there are several factors that may indicate a suspect package.  For instance, because of the cost of next-day shipping, most of those packages are sent by businesses, rather than individuals.  But dealers favor next-day shipping, as this is believed to reduce the likelihood of detection.  To maintain anonymity, the dealers use private mail stores.  Most of their packages originate from "source states" for drugs, such as Texas, Arizona, and California.  And the packages may have other unusual features, such as excessive markings or packaging.

The package here exhibited many of these features.  It was labeled with several stickers that indicated handling with care.  It was shipped next-day air from a private store in California,

and both the sender and the recipient were individuals.  Between these features, and the alert from Brio, Meyer believed that the package was likely to contain illegal drugs.

Meyer returned to the stationhouse and put the package into a locked office for the rest of the weekend.  On Monday, November 22, 2010, Meyer summarized his findings and obtained a search warrant for the package.  Shortly thereafter, Meyer opened it and found a substance that, according to preliminary testing, was methamphetamine.

Based on this discovery, Meyer contacted a narcotics task force and set up a controlled delivery of the package to its destination address in St. Paul.  In the meantime, another officer from the Minneapolis St. Paul Airport Police sought an anticipatory warrant for that address.  In the supporting affidavit, this officer recounted the investigation to that point, and advised that the warrant would not be executed unless the package was accepted at the destination address.

Once the warrant was authorized, law enforcement scheduled the controlled delivery for later that day.  Posing as a courier for UPS, Meyer went to the address in St. Paul.  While waiting at the front door with the package, a man approached him from outdoors.

According to Meyers, the man said, "Oh, this must be yours."  The man took the package without comment.  Meyers then asked, "This is for you, right?"  The man answered "yes" and entered the residence.  After this exchange, law enforcement executed the warrant and found incriminating evidence there.  Meyer later identified Tapia as the one who accepted the package.

## II.   Discussion

### A.   Package

Tapia contends that law enforcement did not have reasonable, articulable suspicion to support a seizure of the package.  He argues that Meyer seized the package before Brio alerted to it, and therefore, the ensuing intrusion was not justified.  The Government counters that Brio

alerted to the package before it was seized, so instead, the alert provided reasonable, articulable suspicion on which to seize the package.

In accordance with the protections of the Fourth Amendment, mailings cannot be subjected to unreasonable seizure. As a result, law enforcement cannot seize packages without reasonable, articulable suspicion that the package contains contraband. *See, e.g., United States v. Lakoskey*, 462 F.3d 965, 975-76 (8th Cir. 2006) (quotation omitted).

The threshold issue here is the point at which seizure occurred, as this timing determines what objective information can justify the seizure. A seizure occurs when law enforcement meaningfully interferes with the individual's possessory interest in the package. *See, e.g., United States v. Demoss*, 279 F.3d 632, 635 (8th Cir. 2002). If a package is intercepted by private persons who are not acting on behalf of law enforcement, or with the knowledge or participation of law enforcement, there is no seizure. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quotation omitted).

The record here shows that, after UPS was unable to deliver a suspicious package, they detained it. There is no indication that UPS did so at the behest of law enforcement, or that law enforcement participated in the decision. When Meyer and Brio first arrived at the UPS office, they did not exercise any control over the package. So at the time that Brio sniffed and alerted to the package, no seizure had occurred. *Cf. United States v. Suitt*, 569 F.3d 867, 873 (8th Cir. 2009) (holding that a dog sniff, by itself, was not a seizure of a person for the purposes of the Fourth Amendment).

After Brio alerted to the package, however, Meyer took it to his vehicle. When Meyer did so, he meaningfully interfered with the disposition of the package, and so there was a seizure. So the issue then becomes whether Meyer had reasonable, articulable suspicion at that time.

4

To assess whether an officer has reasonable, articulable suspicion that permits the seizure of a package, the officer must have an objective, particularized basis for believing the package contains contraband.  When developing reasonable, articulable suspicion, the officer can rely on observations and inferences that may elude an untrained observer.  But there must be objective facts that support seizure, and an officer cannot act on an unsupported hunch.  *United States v. Smith*, 383 F.3d 700, 704 (8th Cir. 2004) (quotations omitted).

Where a certified drug-detection dog alerts to illegal narcotics in a package, this is more than enough to justify seizure.  *United States v. Vasquez*, 213 F.3d 425, 427 (8th Cir. 2000).  To the extent that Meyer subsequently examined the package, and found other objective indications that corroborated the possibility of narcotics, this bolsters the objective suspicion provided by the dog sniff.  Nevertheless, Meyer had reasonable, articulable suspicion to seize the package before he examined it.

Tapia further argues that, even if Meyer lawfully seized the package on Saturday, he did not have reason to wait until Monday until obtaining a warrant.  The Government responds that, when Meyer obtained the warrant a day and a half later, he acted with reasonable diligence and the ongoing detention of the package was permissible.

Once reasonable, articulable suspicion is shown, law enforcement may detain a package for a reasonable amount of time.  So long as the investigation proceeds with due diligence, there is no particular deadline by which law enforcement must obtain a warrant to search the package.  *Lakoskey*, 462 F.3d at 977.

Even if the package had not been detained, it seems likely that another delivery would not have occurred until the following Monday.  And law enforcement promptly sought a warrant at the opening of regular judicial business on Monday morning.  In such circumstances, the ongoing

detention did not meaningfully affect the privacy interests Tapia might have in the package.  Law enforcement otherwise acted with due diligence and sought a warrant within a reasonable amount of time.  *Cf. United States v. Ramirez*, 342 F.3d 1210, 1212 (10th Cir. 2003) (observing that appellate courts have upheld detention of mail, without a warrant, for up to five days) (cited with approval in *Lakoskey*, 462 F.3d at 977).

### B.     Residence

Tapia also challenges the search warrant for the residence.  At the motion hearing, he asserted that this was a "four corners" challenge, meaning that the affidavit to the search warrant was not supported by probable cause.  But in his subsequent briefing, Tapia instead contends that the warrant is "fruit of the poisonous tree," asserting that the warrant was tainted by the prior illegal seizure of the package.

Because this Court previously determined that the seizure of the package was lawful, this act does not taint the ensuing search warrant for the residence.  In the interests of completeness, however, this Court will also address whether that warrant is supported by probable cause.  The Fourth Amendment requires search warrants to be based probable cause, and this is satisfied by facts on which a reasonable person would find a fair probability of incriminating evidence on the premises.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In the current matter, law enforcement obtained an anticipatory search warrant for the destination address on the package.  Under this procedure, law enforcement has already verified that a package contains contraband, and execution of the warrant is premised on a successful controlled delivery to the destination address.  Once the controlled delivery occurs, a reasonable person would have sufficient reason to believe that contraband will be found there, and so the

warrant is supported by probable cause.  *See, e.g., United States v. Walker*, 324 F.3d 1032, 1038 (8th Cir. 2003).

Law enforcement lawfully determined that the package here contained methamphetamine, and they successfully completed a controlled delivery of the package to its destination address. Consistent with this procedure, the search warrant here was supported by probable cause.

## III.    Conclusion

When the drug detection dog first alerted to illegal drugs in the package, law enforcement had yet to meaningfully interfere with any possessory interest in the package, and so there was no seizure.  But that alert supplied reasonable, articulable suspicion for the ensuing seizure.  As a result, the seizure was lawful, and evidence flowing from the seizure need not be suppressed. Law enforcement acted with due diligence and lawfully detained the package for one and a half days pending their acquisition of a search warrant for the package.

When a search indicated that the package contained illegal drugs, law enforcement then obtained a warrant for the destination address.  Once law enforcement made a controlled delivery to that address, they had probable cause for the execution of an anticipatory warrant there.  This search was also lawful and there is no cause for suppression here either.  Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Tapia's motion to suppress evidence from search and seizure (Doc. No. 10) be **DENIED.**

Dated this 2nd day of March, 2011.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **March 17, 2011.**  A party may respond to

the objections within fourteen days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.   The district court judge shall make a de novo determination of those portions to which objection is made.   Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.